**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RBS CITIZENS, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 05248 |
| | ) | |
| AKHTAR RAMZANALI, CHICAGO DONUTS, INC., CLOCK TOWER DONUTS, INC., DUNDEE DONUTS, INC., HUNTLEY DONUTS, INC., MCLEAN DONUTS, INC., and TYLER CREEK DONUTS, INC., | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, RBS Citizens, N.A. ("RBS"), filed a complaint alleging that defendants failed to perform their obligations under two loan and security agreements, one for $400,000 and the second for $3,649,000, and claiming that defendants owe an outstanding balance of over $4.4 million. Plaintiff filed a motion for summary judgment asserting that it is entitled to judgment as a matter of law. Defendants responded by challenging the foundation of plaintiff's proffered affidavit in support of summary judgment. Plaintiff filed a reply brief with additional affidavits appended to it and a supplemental statement of material facts. Defendants moved to strike plaintiff's reply brief and additional affidavits. Both motions are now under consideration.

**Motion to Strike**

Defendants move to strike: (1) the declaration of Thomas F. Thompson, upon which RBS

relies in support of its motion for summary judgment, on the basis that it fails to comply with Federal Rule of Civil Procedure 56(e)(1) because it improperly relies on conclusory allegations of default and fails to establish a foundation for the amounts that RBS claims defendants owe by not stating that it is based on personal knowledge; and (2) RBS' reply brief in support of its motion for summary judgment with its supplemental statement of material facts and three additional declarations because these documents constitute new material that RBS should have presented with its initial filing. For the reasons that follow, defendants' motion is denied.

In support of their motion, defendants refer to Federal Rule of Civil Procedure 56 that was effective <u>until</u> December 1, 2010, absent contrary congressional action. Plaintiff's filed its motion for summary judgment on December 13, 2010. Defendants' motion to strike was filed on April 21, 2011. Accordingly, the language of Rule 56 applicable in this instance is the text effective after December 1, 2010. The current rule nevertheless requires that an affidavit used to support or oppose a motion must be made on personal knowledge. Fed. R. Civ. P. 56(c)(4). However, even under the version of Rule 56 cited by defendants, the text clearly states that "[t]he court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, <u>or additional affidavits</u>." Prior Fed. R. Civ. P. 56(e)(1). The new version of Rule 56 likewise allows for supplemental affidavits if a party fails to properly support an assertion of fact. <u>See</u> Fed. R. Civ. P. 56(e) (eff. Dec. 1, 2010). "While the burden is on the proponent of the evidence to make a sufficient showing that any particular piece of evidence is admissible, evidentiary objections must first be raised by the opposing side. There is no rule preventing a party moving for summary judgment from responding to evidentiary objections in its reply or even from providing additional foundation materials with the reply." (Internal citations omitted.)

2

Fenje v. Feld, 301 F. Supp. 2d 781, 810-11 (N.D. Ill. 2003). Indeed, as the Seventh Circuit has pointed out, there is no "blanket prohibition on filing additional affidavits when a movant for summary judgment files a reply brief following a nonmovant's response." Balderston v. Fairbanks Morse Engine Division of Coltec Indus., 328 F.3d 309, 318 (7th Cir. 2003).

Here, plaintiff's reply brief and supplemental statement of facts do not raise new issues or arguments as defendants claim. Rather, the reply brief addresses the evidentiary objections to Thomas F. Thompson's declaration and the additional affidavits rectify the evidentiary deficiency of the Thompson declaration, which did not state that it was based on personal knowledge. The affidavits also provide further foundational support to plaintiff's statement of material facts. The supplemental statement of material facts also does not raise new issues, but instead provides additional citations to the supplemented record for facts already asserted. With respect to defendants' argument that the Thompson declaration improperly contained the legal conclusion that defendants are in default on the loans, this Court is able to disregard those conclusions without striking the entire affidavit. See Pfeil v. Rogers, 757 F.2d 850, 862 (7th Cir. 1985). Accordingly, defendants' motion to strike is denied and this Court will proceed to consider plaintiff's motion for summary judgment.

**Motion for Summary Judgment**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for the Court construes all reasonable inferences in the light most favorable to the non-moving party. Abdullahi v. City of Madison, 423 F. 3d 763, 773 (7th Cir. 2005) . The

party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. Celotex v. Catrett, 477 U.S. 317, 324 (1986).

**1. Factual Background**

The following facts are undisputed. RBS is a national bank, with its main office located in Providence Rhode Island. Defendant, Akhtar Ramzanali is an Illinois citizen. The corporate defendants, Chicago Donuts, Inc., Clock Tower Donuts, Inc., Dundee Donuts, Inc., Huntley Donuts, Inc., McLean Donuts, Inc., and Tyler Creek Donuts, Inc. are Illinois corporations. On August 29, 2007, all defendants and RBS entered into a $400,000 Loan and Security Agreement for an amount up to $400,000.[1] (Dkt. 23-2, Exhibit 1.) In connection with the $400,000 Loan and Security Agreement, Ramzanali executed a $400,000 Line of Credit Note (Dkt. 23-2, Exhibit 2.) On August 29, 2007, the corporate defendants and RBS entered into a Loan and Security Agreement for an amount up to $3,649,000. (Dkt. 23-2, Exhibit 3.) In connection with the $3,649,000 Loan and Security Agreement, the defendants also executed the $3,649,000 Term Note. (Dkt. 23-2, Exhibit 4.)

Sections 2.1 and 2.2 (c) of the $400,000 loan and security agreement and the $3,649,000 loan and security agreement, give RBS a continuing security interest in and to "any and all of the personal property" of borrowers, including, without limitation, its: (i) accounts; (ii) chattel paper; (iii) goods; (iv) inventory; (v) equipment; (vi) fixtures; (vii) farm products; (viii) instruments; (ix) investment property; (x) documents; (xi) commercial tort claims; (xii) deposit accounts; (xiii) letter-of-credit rights; (xiv) general intangibles; (xv) supporting obligations; and (xvi)

---

[1] The agreements were originally entered with Charter One Bank. RBS is a successor to all of Charter One Bank's rights and obligations, effective September 1, 2007.

4

proceeds and products of the foregoing. RBS has perfected its security interests in the $400,000 loan collateral and the $3,649,000 loan collateral by the filing of UCC-1 financing statements. Pursuant to the $400,000 loan, RBS extended secured loans in the amount of $400,000. RBS distributed those funds on August 29, 2007. RBS distributed funds pursuant to the $3,469,000 loan on August 29, 2007.

The corporate defendants each executed separate unlimited guaranties dated August 29, 2007, that unconditionally guarantee payment of the obligations of Ramzanali under the $400,000 loan. (Dkt. 23-4, Exhibits 14, 17, 20, 23, 26, 29.) Each of the loan guaranties provide that each guarantor will make full and punctual payment to RBS of all sums due and owing and all that may become due and owing in the future by the borrower. Ramzanali executed an unlimited guaranty on August 29, 2007, that guarantees payment of the obligations of the borrower under the $3,649,000 loan and the Interest Rate Swap Agreement. The $3,649,000 loan guaranty provides that Ramzanali will guarantee full and punctual payment to RBS of all sums due and owing and all that may become due and owing under the loan. The $3,649,000 loan guaranty further provides that Ramzanali guarantees the due performance by the borrowers of all their obligations under all other present and future contracts and agreements with RBS. (Dkt. 23-4, Exhibit 11.) For the purpose of hedging interest rate risk arising out of their obligations under the loans, the defendants on the $3,649,000 loan and RBS executed the Interest Rate Swap Agreement (Dkt. 23-4, Exhibit 32.) Section 3(b) of the Interest Rate Swap Agreement provides that a default on the $3,649,000 loan constitutes an event of default under the Interest Rate Swap Agreement.

Section 6.1 of each of the loan and security agreements provides a list of thirteen events

5

constituting default, the following are most relevant to the case at bar: (a) failure to pay in full and when due any installment of principal or interest or default of borrower or any guarantor of the obligations under any other loan document or any other agreement with the bank; (c) default of any material liability, obligation or undertaking of borrower or any guarantor of the obligations to any other party; and (d) if the bank determines that borrower or guarantor of the obligations in connection with the agreement made false or misleading statements in their financial statements in any material respect when made

Section 6.2 of each loan and security agreement provides that in the event of default, at RBS' election, "all obligations shall become immediately due and payable without notice or demand." Section 7.3 of each loan and security agreement provides that each borrower is jointly and severally liable for the payment and performance of all other borrowers. Pursuant to the terms of each of the loans, upon an event of default, and without any further demand or notice, RBS is entitled to take possession of and sell the $400,000 loan collateral and the $3,649,000 loan collateral.

On October 31, 2008, RBS sent a letter to the $400,000 loan defendants notifying each of them that it was in default under the $400,000 loan and that pursuant to the terms of the loan, RBS was declaring all amounts owing thereunder to be immediately due and payable. (Dkt. 23-4, Ex. 7.) On October 31, 2008, RBS sent a letter to the $3,649,000 loan defendants notifying each of them that it was in default and that pursuant to the terms of the loan, RBS was declaring all amounts owing thereunder to be immediately due and payable. (Dkt. 23-4, Ex. 9.) RBS sent a second set of similar letters on August 18, 2009, notifying each of the borrowers and each of the guarantors on the two loans of default.(Dkt. 23-4, Ex. 8, 10.) RBS sent a third letter on

November 18, 2009, giving notice of early termination of the agreements. (Dkt. 23-4, Ex. 23.) A fourth letter was sent on December 18, 2009, giving notice of the termination amount and unpaid amounts. (Dkt. 23-4, Ex. 34.).

On August 26, 2009, RBS filed the instant law suit alleging breach of contract, breach of guaranty and seeking replevin to recover under the loan and security agreements, guaranties, and the Interest Rate Swap Agreement. RBS claims that defendants have defaulted and are currently in default under the $400,000 loan and the $3,649,000 loan.

**2. Discussion**

Plaintiff alleges in the Verified Amended Complaint that the corporate defendants are in default under each of the loan and security agreements by: (1) permitting the ratio of its Total Funded Debt to EBITDA to be greater than 5.00 to 1.0, tested as of December 31, 3007; (2) permitting the ratio of its EBITDA (plus Rental Expense) to Interest Expense and CMLTD to be less than 1.15 to 1.0, tested as of December 31, 2007; (3) failing to provide financial statements to RBS within the applicable time limit; and (4) failing to pay obligations when due. Plaintiff alleges that Ramzanali breached the contract by failing to pay the amounts due under the $400,000 loan, and breached the guaranty of the $3,649,000 loan by failing to pay the outstanding indebtedness of Chicago Donuts, Clock Tower Donuts, Dundee Donuts, Huntley Donuts, and Tyler Creek Donuts owed under the $3,649,000 loan and security agreements. Plaintiff has further alleged breach of contract, breach of guaranty, and seeks replevin against each of the corporate defendants for their failure to make payments on the loan agreements.

The provisions of the loan agreements stipulate that Illinois law applies. (Dkt. 23-2, Ex. 1.) Plaintiff claims that defendants have breached the loan and security agreements, the

7

guaranties, and the Interest Rate Swap Agreement. To prevail on a breach of contract claim under Illinois law, a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) performance under the contract by plaintiff; (3) the breach of the contract by the defendant; and (4) a resulting injury to plaintiff. Horwitz v. Sonnenshein Nath & Rosenthal LLP, 399 Ill.App.3d 965, 973 (1st Dist. 2010). A defendant's failure to comply with the duty imposed by the contract gives rise to the breach. Id.

Here, defendants' only response in opposition to plaintiff's motion for summary judgment was its evidentiary challenge to plaintiff's supporting declaration from Thomas Thompson. A nonmovant's failure to respond to a summary judgment motion, does not automatically result in a judgment for the movant. See Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006). The ultimate burden of persuasion remains with plaintiff to show that it is entitled to judgment as a matter of law. Id. However, RBS shifted the burden of production to defendants by supporting its motion for summary judgment with a Local Rule 56.1 statement. Id. Indeed, defendants do not dispute the allegations that they are in default on the loans and guaranties or present any evidence to contradict plaintiff's assertions.

In support of its motion, plaintiff RBS has presented the deposition of defendant Ramzanali, who is the corporate defendants' designated Rule 30(b)(6) witness able to testify on behalf of the corporate defendants. Ramzanali also signed all of the agreements at issue on behalf of the corporate defendants. Ramzanali testified that the loans are not paid in full. (Dkt. 50-3, Ex. C, p. 38-39.) Defendants' answers to plaintiff's Requests to Admit indicate that defendants (Ramzanali and all the corporate defendants) admit failing to make payments on the $400,000 loan and to submit to RBS financial statements that were required under the contracts.

8

(Dkt. 65-3, Ex. C.) Defendants' answers to plaintiff's requests to admit also state that the corporate defendants failed to make payments on the $3,649,000 loan. (Dkt. 65-3, Ex. C.) The loan and security agreements stipulate that both failing to make payments when due and failing to provide financial statements are "Events of Default". Thus, the evidence on file, even when viewed in the light most favorable to the nonmoving party, establishes that defendants have defaulted on the agreements.

It is undisputed that the agreements are valid and enforceable, and that plaintiff performed under the contracts by disbursing funds pursuant to the loan agreements and sending Commercial Loan Payoff Requests. Defendants' failure to perform their obligations under the agreements resulting in default on the loans constitutes a material breach resulting in an injury to plaintiff in the form of financial loss. Accordingly, plaintiff has shown that it is entitled to judgment as a matter of law for breach of the loan and security agreements as well as the guaranty agreements.

Plaintiff is also seeking replevin. In Illinois replevin is strictly a statutory proceeding and the requirements of the statute must be followed precisely. <u>Carroll v. Curry</u>, 392 Ill. App. 3d 511, 513 (2d Dist. 2009)(citing <u>Universal Credit Co. v. Antonsen</u>, 374 Ill. 194, 200 (1940)). Section 19-101 of the Illinois Code fo Civil Procedure provides that "[w]henever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action for replevin may be brought for recovery of such goods or chattel by the owner or person entitled to their possession." 735 ILCS 5/19-101 (West 2010). The trial court then conducts a hearing to review the basis for the plaintiff's alleged claim to possession. 735 ILCS 5/19-107 (West 2010). Thus, the plaintiff must prove that he is lawfully entitled to the possession of the

9

property sough to be recovered, and that the defendant wrongfully detains the property after refusing to deliver possession of it to the plaintiff. International Harvester Credit Corp. v. Helland, 130 Ill. App. 3d 836, 838 (Ill. App. Ct. 2d Dist. 1985) (citing Hanaman v. Davis, 20 Ill. App. 2d 111(1959)).

Defendants also have failed to respond in opposition to plaintiff's replevin claim with any affirmative material contradicting or otherwise contesting plaintiff's assertions. Plaintiff has alleged in a verified complaint that it is entitled to possession of the property pursuant to the provisions of valid agreements and that defendants have not tendered the property constituting collateral for the loans. The agreements at issue specifically provide that they are secured by the borrowers' and guarantors' property. Accordingly, plaintiff is also entitled to judgment as a matter of law for replevin.

Plaintiff requests attorney fees in the amount of $169,024.20 and costs in the amount of $9,667.97. The loan agreements provide for "Costs and Expenses" in section 7.7, which states:

> "Borrower shall pay to the Bank on demand any and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements, court costs, litigation and other expenses) incurred or paid by the Bank in establishing , maintaining, protecting or enforcing any of the Bank's rights or the Obligations including, without limitation, any and all such costs and expenses incurred or paid by the Bank in defending the Bank's security interest in, title or right to the Collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of the Obligations." (Dkt. 23-2, Ex. 1.)

Plaintiff bears the burden of showing the fees are reasonable. See Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996). In the commercial context, reasonableness may be established with evidence that the fee applicant actually paid the legal bills under circumstances in which ultimate recovery was uncertain. See Medcom Holding Co. v. Baxter Travenol Labs., Inc., 200 F.3d 518, 521 (7th Cir. 1999). Here, plaintiff's request is

supported by affidavit and itemized invoices as of November 30, 2010. The affidavit does not state that the invoices have been paid. The invoices themselves are monthly and show both outstanding amounts and amounts due at the time of the invoice, thus some of them have been paid. The invoices are specific in the time and description of each task performed and who performed the tasks. The invoices cover the period of preparation for filing the complaint, researching and drafting the complaint, preparing status reports, attending court and conferences, responding to a motion to dismiss, amending the complaint, preparing and participating in written and oral fact discovery. The amount of fees requested is not exorbitant considering the amount at stake and the uncertainty of recovery of the amount alleged to be outstanding on the loan agreements, i.e. more than $4.4 million. Thus, this Court finds the fees and costs reasonable.

**Conclusion**

Since plaintiff has shown that it is entitled to judgment as a matter of law as to breach of contract and replevin, all that remains is damages. Further proceedings will be necessary to determine the amount recoverable under the contracts. For all of the foregoing reasons, plaintiff's motion for summary judgment is granted.

IT IS SO ORDERED.


Date: June 29, 2011

                                    Entered:_____
                                    Sharon Johnson Coleman